UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| LAURA FULLER, | ) |
| --- | --- |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 4:17-CV-01913-SPM |
| | ) |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This is an action under 42 U.S.C. §§ 405(g) for judicial review of the final decision of Defendant Nancy A. Berryhill, the Acting Commissioner of Social Security, denying the application of Plaintiff Laura Fuller ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, (the "Act"). The parties consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 4). Because I find substantial evidence to support the decision denying benefits, I will affirm the Commissioner's denial of Plaintiff's application.

### I. BACKGROUND

On July 30, 2013, Plaintiff applied for DIB, alleging a disability onset date of January 25, 2013, and asserting disability due to congestive heart failure, coronary artery disease, heart attack, neuropathy, migraine, depression, anxiety, and high cholesterol. (Tr. 62-63). Her application was initially denied on October 22, 2013. (Tr. 70-71). Plaintiff filed a Request for Hearing by Administrative Law Judge ("ALJ"). (Tr. 92). On February 25, 2016, following a

hearing at which Plaintiff, who was represented by counsel testified, the ALJ found Plaintiff was not under a "disability" as defined in the Act. (Tr. 25). Plaintiff filed a Request for Review of Hearing Decision with the Social Security Administration's Appeals Council. (Tr. 141). On June 21, 2017, the SSA's Appeals Council issued a decision adopting most of the ALJ's decision but changing Plaintiff's date last insured. (Tr. 6-7). Plaintiff has exhausted all administrative remedies, and the decision of the ALJ stands as the final decision of the Commissioner of the Social Security Administration.

With regard to Plaintiff's testimony, work history, and medical records, the Court accepts the facts as provided by the parties in their respective statements of facts and responses. The Court will address specific facts related to the issues raised by Plaintiff as needed in the discussion below.

## II. STANDARD FOR DETERMINING DISABILITY UNDER THE ACT

To be eligible for benefits under the Social Security Act, a claimant must prove he or she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Human Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines as disabled a person who is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A); *see also Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for

him, or whether he would be hired if he applied for work." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. 20 C.F.R. §§ 404.1520(a), 416.920(a); [1] *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). At Step One, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i); *McCoy*, 648 F.3d at 611. At Step Two, the Commissioner determines whether the claimant has a severe impairment, which is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities;" if the claimant does not have a severe impairment, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c); *McCoy*, 648 F.3d at 611. At Step Three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. §§ 404.1520(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. §§ 404.1520(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the Commissioner must assess the claimant's "residual functional capacity" ("RFC"), which is "the most a claimant can do despite [his or her] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)); *see also* 20 C.F.R. §§ 404.1520(e). At Step Four, the Commissioner determines whether the claimant can return to his past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f);

---

[1] All references throughout this opinion are to the version of the regulations that was in effect as of the date of the ALJ's decision.

*McCoy*, 648 F.3d at 611. If the claimant can perform his past relevant work, he is not disabled; if the claimant cannot, the analysis proceeds to the next step. *Id.* At Step Five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012).

### III. THE ALJ'S DECISION

Applying the foregoing five-step analysis, the ALJ here found that Plaintiff has not engaged in substantial gainful activity since the alleged onset date, January 25, 2013; that Plaintiff has the severe impairment of status post coronary artery bypass grafting times three; and that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (Tr. 17). The ALJ found that Plaintiff has the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b), except that she cannot climb ladders, ropes, or scaffolds, and she cannot work at unprotected, dangerous heights, or around unprotected, dangerous machinery. (Tr. 20). The ALJ found that Plaintiff is able to perform a range of light work, including her past relevant work as a daycare worker (Dictionary of Occupational Titles ("DOT") No. 359.677-018, light exertion level, semi-skilled), and denied benefits at step four of the sequential analysis. (Tr.

4

24-25). The ALJ concluded that Plaintiff had not been under a disability, as defined in the Act, from January 25, 2013, the alleged onset date, through June 30, 2015, the date she was last insured. (Tr. 25). The SSA's Appeals Council adopted most of the ALJ's decision, except for finding that Plaintiff's date last insured was June 30, 2016, rather than June 30, 2015, as had been mistakenly stated by the ALJ.

## IV. STANDARD FOR JUDICIAL REVIEW

The decision of the Commissioner must be affirmed if it complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole. *See* 42 U.S.C. §§ 405(g); 1383(c)(3); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). "Substantial evidence 'is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a conclusion.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012) (quoting *Moore*, 572 F.3d at 522). In determining whether substantial evidence supports the Commissioner's decision, the court considers both evidence that supports that decision and evidence that detracts from that decision. *Id.* However, the court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

## V. DISCUSSION

Plaintiff argues that the ALJ reached a flawed RFC assessment because the ALJ failed to give "good, specific" reasons for not fully crediting the medical opinions of record, and thus, the RFC is not supported by substantial evidence and is contrary to law. (Doc. 12 at 2). Plaintiff further asserts that because the ALJ discounted the two medical opinions of record, there was no medical opinion to support the RFC, and the ALJ instead improperly relied on his own lay analysis of the raw medical data. The Commissioner argues that the ALJ properly gave little weight to the medical opinions because they were unsupported by the record, and that rather than impermissibly relying on his own lay analysis of the data, he properly based the RFC on the record as a whole.

A claimant's RFC is "the most a claimant can do despite her limitations." *Moore*, 572 F.3d at 523 (citing 20 C.F.R. § 404.1545(a)(1)). It is the ALJ's responsibility to determine a claimant's RFC "based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)).

In this case, the ALJ conducted a review of Plaintiff's testimony and medical records, conducted an analysis of the consistency of her subjective complaints with the evidence of record, analyzed each of the medical opinions in the record, and made the following findings regarding Plaintiff's RFC:

> After careful consideration of the entire record, the undersigned finds that through the date last insured, the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) that includes being limited to no climbing of ladders, ropes or scaffolds, and no working at unprotected, dangerous heights or around unprotected machinery.

(Tr. 20). In reaching his decision, the ALJ reviewed, and ultimately discounted, an opinion rendered by Plaintiff's treating physician, Dr. Mehmet Cilingiroglu ("Dr. Cilingiroglu"), and similarly considered and discounted the opinion of a consultative examiner, Dr. A. Rashid Qureshi ("Dr. Qureshi").

### A. ALJ's Evaluation of Medical Opinion of Dr. Cilingiroglu

Plaintiff first argues that remand is required because the ALJ erred in discounting the opinion of her cardiologist, Dr. Mehmet Cilingiroglu. (Doc. 33 at 7-8). Plaintiff alleges that under 20 C.F.R. § 404.1527(c),[2] the ALJ should have accorded "controlling weight," to the opinion of her treating physician and that after choosing to assign less weight, he should have, but failed to, offer "good" and "specific" reasons for the weight given. "Generally, [a] treating physician's opinion is due controlling weight if that opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." *Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004). However, "[a]n ALJ may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." *Skelton v. Colvin*, No. 1:14-CV-143-RLW, 2016 WL 320129, at *8 (E.D. Mo. Jan. 26, 2016) (quoting *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir.2005) (internal quotation omitted); *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010). A physicians' opinion that a claimant is incapable of gainful employment is often not entitled to significant weight. *Bradley v. Astrue*, 528 F.3d 1113, 1116 (8th Cir. 2008).

---

[2] These regulations apply to claims filed before March 27, 2017, including the claim at issue in this case. For claims filed after March 27, 2017, the rule that a treating source opinion is entitled to controlling weight has been eliminated. *See* 20 C.F.R. § 404.1520c.

7

The Court finds that the ALJ gave good reasons, supported by substantial evidence, for partially discounting the opinion of Dr. Cilingiroglu. The ALJ was clear in that he gave little weight to Dr. Cilingiroglu's opinion because it conflicted with the contemporaneous medical records as well as other evidence in the record as a whole. *See* 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion."). A medical source opinion that is inconsistent with the objective medical evidence cannot be afforded controlling weight. *See* 20 C.F.R. § 404.1527(c)(2) (to be afforded controlling weight, a medical opinion must be consistent with the record as a whole, and must be supported by the objective medical evidence).

Dr. Cilingiroglu, in his opinion dated September 12, 2013, opined that Plaintiff could lift and carry up to twenty pounds frequently, could frequently crouch and squat, could stand or walk for up to three hours a day and sit for three hours a day, required the option to transition from sitting or standing at will, and that her symptoms of headache, chest pain, numbness in her left upper extremity, and dizziness would cause frequent interference with her attention and concentration, and that she had no ability to tolerate even a low stress job. (Tr. 398-400).

However, as the ALJ noted, Plaintiff's treatment records do not support this opinion. Dr. Cilingiroglu was Plaintiff's treating cardiologist between January and May of 2013, and Plaintiff attended three doctor's appointments with him during that time period. The first of those visits was on January 30, 2013, which was after the alleged onset date of January 25, 2013, but prior to the date when Plaintiff had heart surgery on February 19, 2013. Dr. Cilingiroglu's treatment notes from that appointment indicated that Plaintiff reported having no severe headaches, no fainting or near fainting episodes, and was experiencing only occasional dizziness and chest

discomfort. (Tr. 297-98). At Plaintiff's second appointment with Dr. Cilingiroglu on March 30, 2013, his treatment notes indicated that Plaintiff reported experiencing no dizziness, no shortness of breath, no muscle pain or weakness, and that her heart rate and rhythm were normal, she was alert and oriented, and appeared to be doing well with no significant chest pain. (Tr. 290-91). At Plaintiff's third and final appointment with Dr. Cilingiroglu on May 22, 2013, his treatment notes indicated that Plaintiff reported that she was feeling well with only occasional dizziness, that she exhibited no chest pain, no motor weakness, no fainting or near fainting, and was alert and oriented. (Tr. 287-88). The ALJ reasonably concluded that Dr. Cilingiroglu's opinion was inconsistent with the record as a whole, and gave good reasons for assigning it "little weight." (Tr. 23). *See Whitman v. Colvin*, 762 F.3d 701, 706 (8th Cir. 2014). As noted *supra*, a treating physician's opinion is entitled to controlling weight only if it is not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2). "An ALJ may discount a treating source opinion that is unsupported by treatment notes." *Aguiniga v. Colvin*, 833 F.3d 896, 902 (8th Cir. 2016) (internal citation omitted).

Additionally, Dr. Cilingiroglu's opinion itself contains puzzling internal inconsistencies. For example, while Dr. Cilingiroglu opined that Plaintiff's symptoms of dizziness, fatigue, and pain were serious enough that they would render her incapable of even low stress jobs, and that any job would cause Plaintiff to suffer from "more stress," (Tr. 400) he also opined that Plaintiff's prognosis was "good" (Tr. 399) and that her impairments would "never" cause her to be absent from work. (Tr. 400). This too supports the ALJ's decision to discount Dr. Cilingiroglu's opinon. *See Thomas v. Berryhill*, 881 F.3d 672, 675 (8th Cir. 2018) (the Commissioner may discount or disregard the opinion of a treating physician when it is internally inconsistent).

Additionally, as the ALJ noted, treatment records of other health care providers are likewise inconsistent with Dr. Cilingiroglu's opinion. For example, on May 31, 2013, Plaintiff saw a neurologist, Dr. Abdel-Rahman Saleh, to whom she had been referred because of her reports of occasional dizziness and numbness in her left arm. At that appointment, the treatment records indicate that the physical examination of Plaintiff revealed that she had normal muscle bulk, tone, and strength in all extremities, no vertigo, normal coordination and gait, no numbness in her upper extremities, and normal attention span and concentration. (Tr. 363). At a subsequent visit with Dr. Saleh on June 25, 2013, the treatment records reveal similar findings, and also indicate that she had undergone an MRI and a NCS/EMG with negative neurological findings. (Tr. 359). The treatment records from her third and final visit with Dr. Saleh on July 16, 2013, indicate substantially analogous findings. (Tr. 357-58).

The Court also agrees with the ALJ's determination that Plaintiff's testimony and statements regarding her activities of daily living were inconsistent with the limitations imposed in Dr. Cilingiroglu's opinion. (Tr. 20, 22). *See Whitman*, 762 F.3d at 706 (ALJ reasonably stated he discounted physician's opinion because the opinion was "more restrictive than self-reported activities"); *see also Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) (fact that claimant continues to engage in many normal daily living activities supports finding of ability to work). For example, in her Function Report, Plaintiff indicated that she goes grocery shopping every week, takes care of household chores daily, including meal preparation, laundry, and light housework, that she has no trouble with self-care such as bathing and getting dressed, that she can lift twenty pounds, and that she cares for her pet cat and changes its litter. (Tr. 184-86). Also in her Function Report, Plaintiff indicated that she did not have trouble sitting, standing, walking, climbing stairs, bending, understanding and following instructions, completing tasks, getting

along with others, or with her memory. (Tr. 189). Additionally, at her hearing, Plaintiff testified that the only pain management therapy she had been undergoing was sometimes taking an over-the-counter acetaminophen painkiller as needed for headache, and that it helped alleviate her pain. (Tr. 40). *See Benskin v. Bowen*, 830 F.2d 878, 884 (8th Cir. 1987) (disabling pain not indicated when claimant merely took Advil and aspirin to relieve pain). In summation, the Court's review shows there was substantial evidence in the record to support the ALJ's decision to assign little weight to Dr. Cilingiroglu's opinion.

### B. ALJ's Evaluation of Medical Opinion of Dr. Qureshi

Plaintiff similarly argues that the ALJ erred in discounting the opinion of Dr. Qureshi, who performed a consultative evaluation of Plaintiff on September 29, 2015. (Tr. 476). Dr. Qureshi opined that Plaintiff had the ability to frequently lift and carry up to 10 pounds, but that she should never lift more than that; that she could sit three hours total in an eight hour work day; stand two hours total in an eight hour work day; walk thirty minutes in an eight hour work day, could occasionally use her hands in reaching, handling, fingering, feeling, pushing or pulling bilaterally; could not operate foot controls; could not climb laders or scaffolds; could not balance; could occasionally climb ramps or stairs, stop, kneel, crouch or crawl; required quiet library-like conditions; and should not work at unprotected heights or with moving mechanical parts. (Tr. 482-87). When a medical opinion is not from a treating source, the ALJ considers the following factors in determining the weight to be given to the opinion: "(1) examining relationship, (2) treating relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors." *Wiese v. Astrue*, 552 F.3d 728, 731 (8th Cir. 2009).

The ALJ gave Dr. Qureshi's opinion "little weight," and stated that he did so because his opinion was not consistent with objective medical evidence and the "treatment records show

little to support" the opinion. (Tr. 23). Plaintiff argues that the ALJ erred in giving little weight to Dr. Qureshi's opinion because he failed to provide good and specific reasons for discrediting the opinion. However, this contention is refuted by a review of the ALJ's decision. The ALJ noted that Dr. Qureshi, in his consultative examination report, stated that Plaintiff was doing well from a cardiac standpoint, that the neurological studies that had been done did not show any significant issues, and that her reported symptoms were unrelated to her cardiac system. (Tr. 23-24). The ALJ thoroughly considered and discussed Plaintiff's treatment history, the objective medical evidence, her functional restrictions, and her activities of daily living, noting numerous examples of examination findings and other evidence that contradicted the opinions of both Dr. Qureshi and Dr. Cilingiroglu. (Tr. 18-24). I discussed these inconsistencies at length when reviewing the ALJ's evaluation of Dr. Cilingiroglu's opinion, *supra*, and will not repeat that discussion here.

The Court finds that the ALJ gave good reasons, supported by substantial evidence, for partially discounting the opinion of Dr. Qureshi. The ALJ was clear in that he gave little weight to Dr. Qureshi's opinion because it conflicted with the contemporaneous medical records as well as other evidence in the record as a whole. *See* 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion."). The Court concludes that the ALJ properly applied the factors for evaluating a consultative examiner's opinion, and the weight he assigned to Dr. Qureshi's opinion is supported by substantial evidence in the record as a whole.

### C. Substantial Evidence Supports the RFC

Plaintiff also argues that reversal is warranted because no medical opinion of record supports the ALJ's physical RFC determination, as the ALJ rejected the opinions of both Dr. Cilingiroglu and Dr. Qureshi, and failed to then take proper steps to correct this alleged deficiency of record, such as ordering further consultative examinations, or re-contacting Plaintiff's treating or consultative examiners for clarification of their opinions. (Doc. 12 at 15). Plaintiff further asserts that the ALJ, rather than expanding the record in the manner suggested by Plaintiff, instead impermissibly relied on his own lay analysis of the raw medical data in determining her RFC. *Id*. Consequently, Plaintiff argues, the RFC is not supported by substantial evidence. *Id*. The Court disagrees. "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007). However, there is no requirement that an RFC finding be supported by a specific medical opinion. *See Perks v. Astrue*, 687 F.3d 1086, 1092-93 (8th Cir. 2012). Furthermore, "[e]ven though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner." *Cox*, 495 F.3d at 619-20.

Here, the ALJ, first of all, did not reject the opinions of Drs. Cilingiroglu and Qureshi. He merely assigned "little weight" to them. (Tr. 22). *See Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007) (considering a physician's opinion and deciding to give "little weight" to it is not equivalent to rejecting the opinion). Thus, they remained opinions of record as to Plaintiff's physical functional limitations, and the ALJ properly considered them and discounted the weight accorded them because he found them to be inconsistent with the evidence in the record as a whole. Further, there were two other opinions of record considered by the ALJ. Two different

state agency medical consultants, Dr. Charles Friedman and Dr. Rita Allbright, opined in October and December of 2013 that Plaintiff could perform the full range of medium work. (Tr. 68-71; 79-82). The ALJ considered their opinions and accorded them "great weight." (Tr. 24). *See* 20 C.F.R. §§ 404.1527(f)(2)(i); *Kamann v. Colvin*, 721 F.3d 945, 951 (8th Cir. 2013) (state agency medical consultants are considered to be highly qualified experts in Social Security disability assessment, and the ALJ must consider their findings). However, after considering the entire record, the ALJ found Plaintiff more limited than opined by the medical consultants, and assigned a more restrictive RFC, acknowledging Plaintiff's symptoms as established by the medical record.

The ALJ also conducted an independent review of the medical evidence. As to the record as a whole, apart from opinion evidence, it contained extensive treatment records which provided more than adequate medical evidence of Plaintiff's ability to function in the workplace. (Exs. 2F, 3F, 4F, 5F, 6F, 7F, 8F, 9F). In the absence of other medical opinion evidence, "medical records prepared by the most relevant treating physicians [can] provide affirmative medical evidence supporting the ALJ's residual functional capacity findings." *Johnson v. Astrue*, 628 F.3d 991, 995 (8th Cir. 2011). With the medical record adequately developed, the ALJ was not required to order an additional consultative examination or otherwise obtain additional medical evidence, and the failure to do so is not cause for reversal. *See KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 372-73 (8th Cir. 2016); 20 C.F.R. § 404.1519a(b); *see also Martise v. Astrue*, 641 F.3d 909, 926-27 (8th Cir. 2011) (The ALJ is required to order further medical examinations only if the existing medical record does not provide sufficient evidence to determine whether the claimant is disabled).

Finally, The Court finds that the ALJ did not improperly substitute his lay opinion of the raw medical data. As discussed above, the record contained sufficient medical evidence to determine and support the RFC. It is the ALJ's function to weigh conflicting evidence and to resolve inconsistencies in the medical evidence, as well as disagreements among physicians. In this case, the ALJ fulfilled that function, and based the RFC on the record as a whole, as opposed to impermissibly substituting his own lay analysis. *See Tindell v. Barnhart*, 444 F.3d 1002, 1007 (8th Cir. 2006) ("The ALJ included all of Tindell's credible limitations in his RFC assessment, and the ALJ's conclusions are supported by substantial evidence in the record.").

## V. CONCLUSION

Having reviewed the entire record, the Court finds the ALJ properly considered and weighed the medical opinion evidence in the record. The Court also finds the ALJ considered the medical evidence as a whole, and made a proper RFC determination based on a fully and fairly developed record. Consequently, for all of the foregoing reasons, the Court determines that the ALJ's decision is supported by substantial evidence. Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the decision of the Commissioner of Social Security is **AFFIRMED**.

_____
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 13th day of September, 2018.